UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD D. O'NEAL,                          Civil Action No. 12-13273


      Plaintiff,                          HON. ARTHUR J. TARNOW
                                                     U.S. District Judge
v.                                          HON. R.  STEVEN WHALEN
                                                     U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Richard D. O'Neal ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below I recommend that Defendant's motion be DENIED and Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On March 9, 2010, Plaintiff filed an applications for DIB and SSI, alleging disability as of August 30, 2009 (Tr. 114-122). After the initial denial of the claim, he requested an administrative hearing, held on March 8, 2011 in Detroit, Michigan before Administrative Law Judge ("ALJ") Gregory Holiday (Tr. 27). Plaintiff, represented by attorney Norton Cohen, testified (Tr. 30-49), as did Vocational Expert ("VE") Harry Cynowa (Tr. 50-58). On March 18, 2011, ALJ Holiday found Plaintiff not disabled (Tr. 21-22). On July 9, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on July 25, 2012.

## BACKGROUND FACTS

Plaintiff, born May 18, 1956 was two months short of his 55th birthday when the ALJ issued his decision (Tr. 22, 114). He completed high school and worked previously as an assembler, "fire safety" worker, hair stylist, and laborer (Tr. 139-140). His application for benefits alleges disability as a result of a back injury (Tr. 138).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

His current weight of 205 was about 20 pounds heavier than his August, 2009 pre-injury weight (Tr. 31). The injury occurred while he was lifting flooring at work but initially did not create significant symptoms (Tr. 31). However, two week later, he experienced

abrupt back and shooting leg pains (Tr. 32).  Limitations brought on the injury forced him to stop working (Tr. 32).  A Workers' Compensation claim was pending (Tr. 33).

Ongoing hand and foot pain created sleep disturbances and grip weakness (Tr. 33-34).  On occasion, he experienced problems holding a liquid filled pot (Tr. 34).  It now took him a day to clean one room of his home, in contrast to before the accident when he was able to clean his entire house in the same amount of time (Tr. 35).  He continued to play the guitar (Tr. 35).  He was able to complete his grocery shopping in 40 minutes by shopping when the store was not crowded (Tr. 35).  He denied computer use (Tr. 36).

Plaintiff lived in a single family home with his 13-year-old son (Tr. 36).  He experienced difficulty performing laundry chores and climbing stairs (Tr. 37).  He denied performing yard work (Tr. 37).  After ensuring that his son was prepared for school each morning, Plaintiff spent long tracts of the day reclining and watching television, breaking up the day by performing light household chores (Tr. 38).  On occasion, he took his son to the movies (Tr. 39).

Plaintiff currently received treatment from a family physician who prescribed medication for hypertension, Vicodin, and a cane (Tr. 40).  He was unable to sit or stand for more than 30 minutes before requiring a position change (Tr. 42).  He relieved back pain by reclining (Tr. 42).  He experienced difficulty carrying groceries, noting that a recent fall while carry groceries requiring him to seek chiropractic treatment (Tr. 43).  He was unable to lift more than a gallon of milk at a time (Tr. 43).  He denied psychological conditions (Tr. 44).  He disliked taking Vicodin (Tr. 44).  He admitted that he received a "DUI" sometime

-3-

prior to 2001 (Tr. 44). His current alcohol use was restricted to "a couple of drinks" on weekends (Tr. 44). He denied current marijuana use or ever using other illicit drugs (Tr. 45).

In response to questioning by his attorney, Plaintiff stated that his most recent job required him to lift up to 100 pounds (Tr. 46). He would be unable to return to his work as a hairdresser due to his inability to stand for long periods and manipulative limitations (Tr. 46). His guitar playing created hand numbness (Tr. 46). He reclined for up to seven daytime hours each day (Tr. 46). The shooting leg pains were worse on the left side (Tr. 47). He denied vacations or attendance at sporting events since the workplace accident (Tr. 47-48). His lack of health insurance prevented him from obtaining an MRI recommended by his treating physician (Tr. 48).

###    B.    Medical Evidence

In August, 2009, Plaintiff sought treatment on multiple occasions for back pain (Tr. 194, 201). The following month, Luzviminda C. Rivera, M.D. noted complaints of ongoing back pain, noting that Plaintiff required the use of a cane (Tr. 195). She referred him to a neurologist (Tr. 195). A CT of the lumbar spine showed bulging with moderate central canal stenosis at L4-L5 and a disc herniation with neuroforaminal encroachment and stenosis at L5-S1(Tr. 186). Despite these findings, neurologist Alfredo Balarezo, M.D. noted that Plaintiff exhibited a normal gait and was "practically asymptomatic" (Tr. 185). He opined that the L5-S1 disc protrusion "would explain the intermittent severe painful episodes that he has had through the years" (Tr. 185). He found that Plaintiff did not require surgical

intervention (Tr. 185). The following month, Dr. Rivera's treating notes state that Plaintiff experienced recent exacerbation of the lower back pain (Tr. 196).

In February, 2010, Dr. Balarezo, M.D. observed that Plaintiff experienced difficulty tandem gait walking and numbness and pain in all extremities (Tr. 202-203). Dr. Balarezo ordered a neurosurgical examination and additional testing (Tr. 203). He noted that a previously recommended MRI had not been performed due to Plaintiff's lack of insurance (Tr. 203). The following month, neurosurgeon Norman J. Rotter, M.D. noted Plaintiff's reports of radiating lower back pain (Tr. 204). Plaintiff exhibited an antalgic gait and was unable to "toe walk" (Tr. 204). Dr. Rotter noted that the September, 2009 CT scan was "not too revealing," remarking that an MRI scheduled for that day had been cancelled (Tr. 205). The same month, Dr. Rivera In advised Plaintiff not to lift or push "anything heavy" (Tr. 207).

In January, 2011, Jack Belen, M.D. performed a one-time consultative examination of Plaintiff, noting a 50 percent reduction in range of back motion (Tr. 214). He recommended an MRI (Tr. 215). Dr. Belen opined that Plaintiff was limited to sedentary work (Tr. 215). Dr. Belen also advised Plaintiff to "follow up with a specialist in physical medicine and rehabilitation and proceed with the work up and receive appropriate treatment" for the condition (Tr. 215).

## C.    Vocational Expert Testimony

VE Harry Cynowa classified Plaintiff's former work as a construction worker as semiskilled at the heavy exertional level and hand packager, unskilled/medium[1]  (Tr. 50). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education and work experience:

> [A]ssume . . . a person . . . who is able to perform at not more than the medium exertional level with the following additional restrictions.  The person can only occasionally . . . up to one-third of a normal work day[,] operate foot controls, can no more than briefly up to 10 percent of a work day climb ladders, ropes or scaffolds; can only occasionally perform stooping, can up to frequently . . . up to two-thirds of a work day perform reaching with the upper extremities, only occasionally perform overhead reaching and handling, only occasionally perform gross manipulation and can not more than frequently perform fine manipulation with the hands[,] same with feeling, not more than frequently. With those restrictions, could such a person perform Mr. O'Neal's past work? (Tr. 53).

The VE replied that given the above limitations, the individual could perform Plaintiff's past relevant work as a hand packager (Tr. 53).  The VE stated that if the same individual were limited to exertionally light work,  occasional fine manipulative activity, and a "sit stand" option, he would be unable to work as a hand packager but could perform the exertionally light work of an information clerk (4,000 positions in the regional economy); lobby or gate

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

attendant (2,500); and inspector checker (1,000) (Tr. 53-54).  The VE testified further that

if the same individual were precluded from all ladder, rope and scaffold climbing and could

perform only brief stooping, overhead reaching, handling, and fine manipulation the job

numbers would not change (Tr. 54-55).  Next, the VE testified that if the same individual

were limited to sedentary work, all of the above jobs would be eliminated but would allow

for the sedentary work of an information clerk (4,000);  security monitor (1,500); and visual

inspector (1,500) (Tr. 55).   The VE stated that if the same individual required four

unscheduled, 10-minute breaks each day, all competitive work would be eliminated (Tr. 55).

In response to questioning by Plaintiff's attorney, the VE testified that the need to lie down

periodically over the course of a day would preclude all work (Tr. 57).

### D.  The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe

impairments of a disc disorder and numbness of the hands and feet, but that neither of the

conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 15).  The ALJ found that Plaintiff had the Residual Functional Capacity

("RFC") for light work with the following limitations:

> [R]equires the option to sit or stand at will; can only onccasionally (up to 1/3
> of the work day) use foot controls; cannot climb ladders, ropes or scaffolds;
> can only briefly (up to 10% of the work day) stoop; can frequently (up to 2/3
> of the work day) reach, but only briefly perform overhead reaching or
> handling; can only occasionally perform gross manipulation; can only perform
> brief fine manipulation; and can perform feeling no more than frequently (Tr.
> 16).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as an information clerk, inspector/checker and lobby or gate attendant (Tr. 21).

The ALJ discounted Plaintiff's testimony that a cane had been prescribed, noting that the treating notes did not show that Dr. Rivera prescribed a cane (Tr. 18).  The ALJ rejected Dr. Belen's opinion that Plaintiff was restricted to sedentary activity, finding that it was not supported by "imaging or other objective data or by any independent or other professional opinion . . ." (Tr. 19).  The ALJ found that Dr. Belen's finding that Plaintiff was limited to sedentary work stood at odds with Plaintiff's testimony that he performed a wide range of household activities (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account

-8-

whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-9-

## <u>ANALYSIS</u>

Plaintiff makes four arguments in favor of remand.  Given the paucity of treating records, he argues first that the ALJ erred by failing re-contact treating sources or order a consultative examination.  *Plaintiff's Brief, Docket #9* at 5-7.  On a related note, he faults the ALJ for rejecting Dr. Belen's opinion.  *Id.* at 7-8.  He notes that Dr. Belen's preclusion on all but sedentary work is not contradicted by any other medical evidence.  *Id.*   Third, he contends that the ALJ's statement that Dr. Belen's opinion was "'not supported by any imaging or other objective data or by any independent or other professional opinion'" is erroneous, citing the September, 2009 CT scan and Dr. Balarezo's findings.  *Id.* at 9, (citing Tr. 19).  Finally, he argues that his collection of state unemployment benefits was improperly cited in support of the non-disability findings.  *Id.* at 10.

Because Plaintiff's arguments all rely on the same evidence, the Court considers them in tandem.

### A.  Substantial Evidence Does Not Support the ALJ's Opinion

Plaintiff is correct that the ALJ erred by failing to augment the medical transcript by either re-contacting the treating sources or ordering a consultative examination.  Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir.1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971).   The administrative fact-finder is required to develop a claimant's "complete medical history" for the period under consideration, including re-contacting

-10-

treating sources where required to complete the record and additionally, if necessary, obtaining a consultative examination.  20 C.F.R. § 416.912 (d-e).

The ALJ's failure to query the treating sources or order a post-hearing consultative examination is of particular concern in this case.  First, as Plaintiff correctly notes, "this case was decided without the benefit of any consultative examination or the opinions of any medical consultants or medical experts, as can be found in most Social Security cases." *Plaintiff's Brief* at 6-7.  The fact that the original record did not include a consultative examination by the SSA or a Residual Functional Capacity Assessment makes the need for additional evaluative records particularly critical.

Second, the ALJ does not dispute that Plaintiff's ability to make his case was hampered by financial constraints (Tr. 19).  Pursuant to SSR 96–7p, 1996 WL 374186, *7, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." The ALJ acknowledged Plaintiff's claim that he could not afford to pay for diagnostic testing recommended by Dr. Rotter, but (as noted by Plaintiff) "bemoaned" the absence of treating records and objective studies supporting the claim. *Plaintiff's Brief* at 6 (citing Tr. 19).  Thus, while the ALJ acknowledged Plaintiff's financial constraints, he did not appear to factor them into the credibility determination as required by SSR 96-7p. The ALJ's finding that Plaintiff was not disabled because he continued to do "laundry, light cooking, shopping and

housework" amounts to a distortion of Plaintiff's testimony that he performed these activities between rest periods and even then, slowly and with difficulty (Tr. 34-38). *See Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967)(claimant's ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not establish the "ability to engage in substantial gainful activity"); *Fulwood v. Heckler,* 594 F.Supp. 540, 543 (D.C.D.C.1984)(same).

The ALJ's rejection of Dr. Belen's opinion on the basis that it was not supported by the objective evidence is particularly problematic, given that the only imaging study (a CT scan showing a disc herniation with nerve root involvement) actually supported Dr. Belen's conclusions[2] (Tr. 186). In addition, the ALJ's finding that collecting unemployment benefits discredited the disability claim is questionable (Tr. 15). To be sure, a claimant's collection unemployment benefits while alleging disability can be used in support of a non-disability

---

[2]

A finding that Plaintiff, 54 at the time of the decision, was limited to sedentary work would have resulted in a disability determination. Under the Social Security Administration's regulations, a person (1) who is 'closely approaching advanced age' (that is, a person between the ages of fifty and fifty-four, *see* 20 C.F.R. § 404.1563(d)), (2) who has a high school education that does not provide for direct entry into skilled work, and (3) whose previous work experience was skilled or semiskilled work that is not transferable to other jobs in the national economy, is generally considered disabled ... if her impairments limit her 'maximum sustained work capability' to sedentary work." *Rogers v. Commissioner of Social Security,* 2000 WL 799332, * 1 (6th Cir. June 9, 2000). "Such a claimant is not considered disabled if she can do light or medium work. *Id.;* 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.14.

finding. *See Workman v. Commissioner of Social Sec.,* 105 Fed.Appx. 794, 801, 2004 WL 1745782, *7 (6th Cir.June 29, 2004)("applications for unemployment and disability are inherently inconsistent"). However, before doing so, the ALJ was required to consider the entirety of circumstances surrounding the application for benefits. *Smith v. Astrue,* WL 3897752, *5 (E.D.Mich. July 6, 2011). In the present case, the application for unemployment benefits (requiring Plaintiff to state that he was looking for work) is not inconsistent with his position that he is limited to sedentary work. *See* fn 2.

### B.  Additional Grounds for Remand

Although not raised by Plaintiff, the ALJ also erred by placing greater limitations in the RFC than those in the hypothetical question. While the ALJ required only a "sit/stand" option in his hypothetical question to the VE, the RFC contained a sit/stand *at will* option (Tr. 16, 53-54). A sit/stand option, stated either in the RFC or hypothetical question, should include the required frequency of position changes. SSR 96–9,1996 WL 374185, *7 (July 2, 1996)("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). Generally, the inclusion of the "at will" option significantly erodes the VE's job numbers. *See Waters v. Commissioner of Social Sec.,* 2012 WL 511998, *3 (E.D.Mich. January 5, 2012)(sit/stand option would reduce light jobs by 50 percent); *Grubb v. Commissioner of Social Sec.,* 2011 WL 846073, *2 (E.D.Mich. February 9, 2011)(sit/stand option reduced existing light jobs by 90 percent). The hearing transcript gives no indication that the VE inferred an "at will" sit/stand option from the question when giving

-13-

the job testimony.  As such, the failure to include the option in the hypothetical question invalidates the VE's job findings. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003) (Roberts, J.) (job findings made in response to an incomplete set of limitations do not constitute substantial evidence).   Because substantial evidence does not support the Step Five findings, remand on this basis is also appropriate.

Finally, I note that Plaintiff was just two months short of his 55th birthday at the time ALJ Holiday determined that he could perform light work.   A finding that an individual 55 or older was capable of only unskilled light or sedentary work would direct a disability finding. *Preslar v. Secretary of Health and Human Services,* 14 F.3d 1107, 1111 (6th Cir. 1994); 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.04.  Given that Plaintiff was almost 55 at the time of decision, the ALJ could have, but was not required to find that Plaintiff was of "advanced age" for purposes of the disability determination. *Crady v. Secretary of Health & Human Services,* 835 F.2d 617, 622 (6th Cir. 1987).  While an ALJ is not required to articulate his reasons for declining to categorize Plaintiff as an "advanced age" individual, *Bowie v. Comm'r of Soc.,* Sec., 539 F.3d 395, 399 (6th Cir.2008), in a decision such as this, fraught with errors and omissions, the seeming absence of consideration to Plaintiff's "borderline" status raises yet another concern.

-14-

**CONCLUSION**

For the reasons stated above, I recommend that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's motion be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by

motion and order such page limit is extended by the court.  The response shall address

 specifically, and in the same order raised, each issue contained within the objections.


                s/R. Steven Whalen          

                R. STEVEN WHALEN

                UNITED STATES MAGISTRATE JUDGE


Dated: August 5, 2013

---

## CERTIFICATE OF SERVICE

       I hereby certify on August 5, 2013, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on August 5, 2013: **None.**


                s/Terri L. Hackman 

                Judicial Assistant to

                Magistrate Judge R. Steven Whalen

                (313) 234-5115